J-S38032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.E.V., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.V., MOTHER | : | No. 2831 EDA 2016 |

Appeal from the Order Dated August 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000640-2016,
FID: 51-FN-002378-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.V., MOTHER | : | No. 2832 EDA 2016 |

Appeal from the Order Dated August 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000641-2016,
FID: 51-FN-002378-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S.V., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.V., MOTHER | : | No. 2833 EDA 2016 |

Appeal from the Order Entered August 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000642-2016,
FID: 51-FN-002378-2012

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 27, 2017**

Appellant, N.V. ("Mother"), appeals from the orders entered in the

Philadelphia County Court of Common Pleas Family Court, which changed

_____

*Former Justice specially assigned to the Superior Court.

the family goal to adoption and granted the petitions of the Department of Human Services ("DHS") for involuntary termination of Mother's parental rights to her minor children, Z.E.V., A.S.R., and S.S.V. ("Children").[1]  We affirm.

In its opinion, the Family Court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Mother raises five issues for our review:

> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] UNDER 23 PA.C.S.A. § 2511(A)(1)?

> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] UNDER 23 PA.C.S.A. § 2511(A)(2)?

---

[1] The Family Court changed the family goal from reunification to adoption and involuntarily terminated Mother's parental rights to Children on August 2, 2016.  Mother timely filed notices of appeal on September 1, 2016, and a briefing schedule was ordered on October 19, 2016.  Notwithstanding the initial appeal filing date, the appeals were dismissed on November 7, 2016, for counsel's failure to comply with Pa.R.A.P. 3517 (governing filing of docketing statement).  The docketing statements were received on November 8, 2016, and the appeals were quickly reinstated *sua sponte* by order of November 10, 2016.  The appeals were consolidated *sua sponte* on November 15, 2016, for disposition.  When counsel failed to file an appellate brief by November 18, 2016, this Court remanded the matter to the Family Court to determine whether counsel had abandoned Mother on appeal and retained jurisdiction.  The cases were not listed sooner for disposition due to the delay caused by counsel.  Although due on 3/14/17, counsel filed Mother's appellate brief on March 16, 2017.  The cases were promptly listed at the conclusion of briefing.  We offer this procedural history to explain the delay in the resolution of this child-fast-track appeal. *See In re T.S.M.*, 620 Pa. 602, 609 n.7, 71 A.3d 251, 255 n.7 (2013) (reproaching this Court for **unexplained** delays in disposition of cases involving at-risk children, causing them to remain in stasis for substantial, unnecessary time).

WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] UNDER 23 PA.C.S.A. § 2511(A)(5)?

WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] UNDER 23 PA.C.S.A. § 2511(A)(8)?

WHETHER THE TRIAL COURT ERRED BY FINDING, UNDER 23 PA.C.S.A. § 2511(B), THAT TERMINATION OF [MOTHER'S] PARENTAL RIGHTS BEST SERVES THE CHILDREN'S DEVELOPMENTAL, PHYSICAL AND EMOTIONAL NEEDS AND WELFARE?

(Mother's Brief at 5).

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the trial court, as the

- 3 -

> finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Mother's parental rights to Children on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

- 4 -

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to

subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of …her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

- 6 -

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for …her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of …her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania

Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability

are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have …her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a

genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of …her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Vincent W. Furlong, we conclude Mother's issues merit no relief. The Family Court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Family Court Opinion, filed October 17, 2016, at 7-11) (finding: under Section 2511(a), Children have been out of Mother's care for at least four years; record demonstrated Mother has not complied with her

- 10 -

2012 FSP objectives or subsequent court orders since 2012; Mother has consistently tested positive for drugs, and Mother has been inconsistent and sporadic in her attendance to court-ordered drug and alcohol counseling; Mother tested positive for drugs as recently as July 22, 2016; ARC discharged Mother for nonparticipation; Mother failed to achieve stable housing; Mother's visitation with Children was sporadic and inconsistent, and her lack of sobriety was of concern; Mother has not taken interest in Children's education and medical care; under Section 2511(b), Children love their Mother but their bond with her is weak; Children do not want to be reunified with Mother because they do not trust her; Children share parent-child bond with kinship parents; Children look to kinship parents for love, comfort, care, and support; record and testimony presented at termination hearing provided clear and convincing evidence to terminate Mother's parental rights under 23 Pa.C.S.A. § 2511 (a)(1),(2),(5), and (8); court further found, pursuant to 23 Pa.C.S.A. § 2511(b), that termination of Mother's parental rights would not have detrimental effect on Children and would be in Children's best interest).  Accordingly, we affirm on the basis of the Family Court opinion.

Orders affirmed.

Justice Fitzgerald did not participate in the consideration or decision of this case.

J-S38032-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2017

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY

IN THE COURT OF COMMON PLEAS

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | |
| Z.E.V., A MINOR | : | FAMILY COURT DIVSION |
| | : | CP-51-AP-0000640-2016 |
| | : | FID-51-FN-002378-2012 |
| | : | 2831 EDA 2016 |
| | : | |
| A.S.R., A MINOR | : | CP-51-AP-0000641-2016 |
| | : | FID-51-FN-002378-2012 |
| | : | 2832 EDA 2016 |
| | : | |
| S.S.V., A MINOR | : | CP-51-AP-0000642-2016 |
| | : | FID-51-002378-2012 |
| | : | 2833 EDA 2016 |
| | : | |
| APPEAL OF: | : | |
| N.V., MOTHER | : | |

## OPINION

### PROCEDURAL HISTORY

On August 2, 2016, the Court held a hearing on the respective Petitions to Terminate the Parental Rights of the biological mother of Z.E.V., A.S.R., and S.S.V. The Appellant N.V. ("Mother") was present at the hearing. After a full hearing on the merits, the Court found clear and convincing evidence to involuntarily terminate the parental rights of Mother as to Z.E.V., A.S.R., and S.S.V.

### STATEMENT OF MATTERS COMPLAINT OF ON APPEAL

Mother's Statement of Matters Complained of on Appeal is set forth in its entirety as follows:

1. The Trial Court did abuse its discretion and commit legal error in terminating mother's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds that mother has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties under 23 Pa.C.S.A. § 2511(a) (1).

\

2. The Trial Court did abuse its discretion and commit legal error in terminating mother's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds under 23 Pa.C.S.A. § 2511(a)(2) that mother lacks the present capacity to perform her parental responsibilities.

3. The Trial Court did abuse its discretion and commit legal error in terminating mother's parental rights 23 Pa. C.S.A. § 2511(a)(5) because the Department of Human Services failed to prove by clear and convincing evidence the present and continued incapacity of mother to provide essential care necessary for child's physical and mental wellbeing.

4. The Trial Court abused its discretion and committed legal error in terminating mother's parental rights under 23 Pa.C.S.A. § 2511(a) (8) because the Department of Human Services failed to prove by clear and convincing evidence that the conditions which led to the child's placement continue to exist.

5. The Trial Court did err in terminating mother's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of showing that the best interest of the child was served by terminating mother's parental rights pursuant to Section 2511(b) of the Adoption Act.

6. The Trial Court abused its discretion and committed legal error in terminating mother's parental rights under 23 Pa.C.S.A. § 2511(b) because the Department of Human Services did not present competent evidence regarding the nature of the bond between parent and child in order to assess the best interest of the child.

## FINDINGS OF FACT

On March 20, 2012, DHS received a General Protective Services Report ("First GPS") alleging Mother left Z.E.V. and S.S.V. unsupervised at home for hours; Mother had a drug problem; and that Mother kept a pit bull and that dog feces were located on the bathroom floor. On March 27, 2012 Z.E.V., S.S.V. and A.S.R. (collectively the "Children") began residing with their maternal grandfather, A. V. ("Maternal Grandfather"). The Children have continued

2

to reside with Maternal Grandfather (Statement of Facts: Petition for Involuntary Termination of Parental Rights).[1]

On August 9, 2012, DHS received a second GPS Report ("Second GPS") alleging that Mother threatened to remove the Children from Maternal Grandfather's care if she did not receive $400.00 from the Children's Supplemental Security Income ("SSI") benefits. The Second GPS also stated that Maternal Grandfather wanted the children to remain in his care due to Mother's drug and alcohol abuse; Maternal Grandfather wanted kinship assistance; that Mother admitted to using PCP three weeks prior to the Second GPS; and that Mother was receiving substance abuse treatment (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

On September 6, 2012, Mother, and Maternal Grandfather appeared for an adjudicatory hearing before the Honorable Judge Jonathan Q. Irvine (Statement of Facts: Petition for Involuntary Termination of Parental Rights). The Children were adjudged dependent and committed to the DHS; Mother was referred to the Clinical Evaluation Unit ("CEU") for drug screen and monitoring (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

---

[1] Between July 22, 2008 and December 29, 2008, the Department of Human Services (DHS) provided Level II Services to Children in their Own Homes (SCOH) through Abraxes to ensure the safety of Z.E.V. and S.S.V. while in the care of Mother. On August 20, 2008, DHS held a Family Case Plan Meeting. The goal identified in the FSP regarding Z.E.V. and S.S.V. was to remain at the home. The objectives identified for Mother were (1) to make sure the children were left with responsible caregivers; (2) to provide the children with regular nutritious meals; (3) to make sure the children were clean and properly clothes; (4) to locate and occupy suitable housing for the family with suitable space, heat, and all other operable utilities; (5) to receive appropriate medical evaluations; (6) to comply with recommended treatments; and (7) to sign an authorization form to allow the Children Youth Division ("CYD") to obtain medical records and reports; (8) for Mother to understand, learn, and use at least two non-physical discipline methods and to comply with Z.E.V.'s medical treatments to include a Magnetic Resonance Imaging (MRI). On June 9, 2010, Mother gave birth to A.S.R.

3

On October 2, 2012, DHS held an FSP meeting (the "Second FSP") (Statement of Facts: Petition for Involuntary Termination of Parental Rights). The objectives identified for Mother were (1) to not leave the Children alone at any time; (2) to make sure the Children are only left with responsible caregivers; (3) to provide the children with regular nutritious meals; (4) to participate in an evaluation for drug and alcohol abuse; (5) to achieve and maintain drug free status to be verified by 12 successful drug screens; (6) to comply with all recommended treatments; (7) to sign an authorization form to allow CYD to obtain evaluations and progress reports; (8) to keep all visits and maintain regular contact with the children; and (9) to meet regularly with the agency social worker and to follow up with the Individual Service Plan ("ISP") (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

On October 16, 2012, Mother was referred to the Achieving Reunification Center ("ARC") program; subsequently, her case was closed due to nonparticipation (Statement of Facts: Petition for Involuntary Termination of Parental Rights). On December 4, 2012, CEU completed a Report of Compliance regarding Mother; stating that she failed to attend treatment and intake. On February 6, 2013, Mother appeared at the ARC program voluntarily. Subsequently, her case was again closed due to nonparticipation on November 7, 2013 (Statement of Facts: Petition for Involuntary Termination of Parental Rights). On December 5, 2012 and January 9, 2013, Mother tested positive for drugs (Statement of Facts: Petition for Involuntary Termination of Parental Rights). At the permanency hearing on March 18, 2013 before Judge Irvine, the Children remained committed (Statement of Facts: Petition for Involuntary Termination of Parental Rights). The objective identified for Mother was (1) to comply with all treatment recommendations; (2) to sign an authorization form to allow the CYD to obtain evaluations and progress reports; (2) to achieve and maintain drug free status to be verified by 12 successful drug screens; and (4) to comply with

all treatment recommendations including therapy and medications and (5) to locate appropriate housing (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

On June 14, 2013, CEU completed a Report of Compliance regarding Mother stating that she had been inconsistent in her treatment (Statement of Facts: Petition for Involuntary Termination of Parental Rights). On August 19, 2013, DHS revised the FSP (Statement of Facts: Petition for Involuntary Termination of Parental Rights). The goals for the Children were to return to parents, guardian or custodian (Statement of Facts: Petition for Involuntary Termination of Parental Rights). The objective identified for Mother remained unchanged. On September 6, 2013, the CEU completed a report regarding Mother stating that she had failed to render a Urine Drug Screen ("UDS") when she reported to CEU on August 28, 2013, and that she tested positive for PCP on July 5, 2013 (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

At the status hearing held on September 9, 2013, Judge Irvine ordered (1) that the Children remain committed; (2) that Mother be offered weekly supervised visits with the Children; (3) that Mother be re-referred to CEU for a drug screen forthwith and three random drug screens. Thereafter, Mother tested positive for PCP on September 9, 2013. At a status hearing on January 6, 2014, the Judge Irvine ordered that (1) the Children remain committed; (2) that Mother maintain weekly visits; (3) Mother be re-referred for drug testing; (4) Mother comply with FSP objectives; (5) that the current placement for the Children be adoption (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

A permanency review hearing was held on January 6, 2014, the Judge Irvine ordered (1) that the Children remain committed; (2) Mother was referred to CEU for a drug screen; (3) that the concurrent plan for the children was adoption. At the permanency review hearing on November 24, 2014, Judge Irvine ordered (1) the Children remain committed; (2) Mother have weekly

5

supervised visitation with the Children.; (3) the Mother have a drug screen. On November 24, 2014, at a permanency review hearing, Judge Irvine ordered (1) that the Children remain committed; (2) Mother be referred to a drug screen with CEU; (3) Mother was offered supervised visits with the Children (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

On April 1, 2015, CEU completed a Progress Report regarding Mother stating that she failed to appear or contact CEU regarding her scheduled assessment on December 18, 2014 and her rescheduled assessment on February 12, 2015; and that she had no further contact with the CEU. A contested goal change hearing was held on April 6, 2015, it was ordered that (1) the Children remain committed; (2) the Mother be offered weekly supervised visits with the Children; (3) the Mother made moderate compliance with the permanency plan; and (4) Mother was to receive a drug screen (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

On May 26, 2015, CEU completed a Progress Report regarding Mother stating that she failed to appear at CEU for a drug screen and to schedule a drug and alcohol assessment. At a goal change hearing held on June 1, 2015, the Honorable Judge Jonathan Irvine ordered (1) the Children to remain committed; (2) that Mother continue treatment. Subsequent to the hearing it was determined that Mother tested positive for drugs on August 10, 2015, August 24, 2015, and August 31, 2015 (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing scheduled on November 30, 2015, Judge Irvine ordered (1) that the Children remain committed; (2) Mother be re-referred for drug testing; (3) Mother be offered supervised visitation with the Children. On March 24, 2016, CEU completed a Progress Report regarding Mother stating that she tested positive for non-cannabis drugs on March 21, 2016, March 10, 2016 and March 7, 2016, March 2, 2016 and February 11, 2016. On July 18,

2016, DHS filed the instant Petition to Terminate Parental Rights. On August 2, 2016, the Honorable Judge Vincent W. Furlong ruled to involuntarily terminate Mother's parental rights to the Children. Thereafter Mother filed the instant Appeal on September 1, 2016 (Statement of Facts: Petition for Involuntary Termination of Parental Rights).

## LEGAL ANALYSIS

In articulating the appellate standard of review of a termination of parental rights the Superior Court has stated:

> We are bound by the findings of the trial court, which have adequate support in the record so long as the findings do not evidence a capricious disregard for competent and credible evidence. *In re Diaz*, 447 Pa. Super. 327, 669 A. 2d 372 (Pa. Super. 1995). Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of the witnesses and all conflicts in testimony are to be resolved by the finder of fact. In re B.G.S., 418 Pa. Super. 588, 614 A.2d 1161 (Pa. Super. 1992).

In re Adoption of A.C.H., 2002 Pa. Super 218, P4; 803 A.2d 224, 228 (2002)

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa. Super. 1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give a jury verdict. *See In re Child M.,* 452 Pa.Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa. Super. 520, 611 A.2d 737, 742 (1992). *In re C.S.*, 2000 PA Super 318, 761 A. 2d 1197, 1199 (Pa. Super. 2000). It is clear that in a termination proceeding, the focus is on the conduct of the parents. *In the Interest of A.L.D.*, 2002 PA Super 104, 797 A. 2d 326 (Pa.Super.2002). *In the Interest of M.D., 449 Pa. Super. 507, 674A.2d 702 (Pa.Super.2002).*

*In the Matter of B.L.W.*, 2004 Pa. Super 30, P9; 843 A.2d 380, 383 (2004)

7

This Court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa. C.S.A. §§2511(a) (1) (2) (5) (8)[2] and 23 Pa.C.S.A. § 2511(b)[3].

The record demonstrates Mother's ongoing unwillingness to provide care or control for the Children or perform any parental duties and her failure to remedy the conditions that brought the child into care. The documents and testimony discussed below provided this Court clear and convincing evidence that termination of Mother's parental rights would be in the best interests of the Children.

In 2012, the Children had been adjudicated as dependent. Mother's First FSP Objectives were established in 2008 and her subsequent FSP Objectives were established in September 2012. (N.T. August 2, 2016 p. 6, lines 1-18) (Statement of Facts: Z.V., S.S.V. and Z.E.V. Petitions for Involuntary Termination of Parental Rights). Pursuant to the 2012

---

[2] (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[3] (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

FSP, the objective identified for Mother were (1) to not leave the Children alone at any time; (2) to make sure the Children are only left with responsible caregivers; (3) to provide the children with regular nutritious meals; (4) to participate in an evaluation for drug and alcohol abuse; (5) to achieve and maintain drug free status to be verified by 12 successful drug screens; (6) to comply with all recommended treatments; (7) to sign an authorization form to allow CYD to obtain evaluations and progress reports; (8) to keep all visits and maintain regular contact with the children; and (9) to meet regularly with the agency social worker and to follow up with the Individual Service Plan ("ISP"). (Statement of Facts: Z.V., S.S.V. and Z.E.V. Petitions for Involuntary Termination of Parental Rights). (N.T. August 2, 2016, p. 7, lines 1-18).

The record demonstrates that the Mother has not complied with her 2012 FSP Objectives and subsequent Court Orders since 2012. Mother has consistently tested positive for drugs and Mother has been inconsistent and sporadic in her attendance in regards to Court ordered drug and alcohol counseling. (Statement of Facts: Z.V., S.S.V. and Z.E.V. Petitions for Involuntary Termination of Parental Rights).

During the Termination hearing the DHS Social Worker testified that Mother tested positive for PCP on March 28, 2016 and July 22, 2016. (N.T. August 2, 2016, p. 11, lines 1-18). The DHS Social Worker also testified that Mother was referred to ARC but that Mother had been discharged for nonparticipation. (N.T. August 2, 2016, p. 12 lines 1-18). The DHS Social Worker testified that Mother had never achieved a stable housing arrangement and that Mother was transient living between the Commonwealth of Pennsylvania and the State of Florida. (N.T. August 2, 2016, p. 12, lines 5-25). (N.T. August 2, 2016, p. 16, lines 19-25). The DHS Social Worker also testified that the Mother's visitation of the Children was

9

sporadic and inconsistent and that her lack of sobriety was a concern. (N.T. August 2, 2016, p. 14, lines 1-25). During the Termination Hearing the DHS Social Worker testified that Z.E.V. should not be reunited with Mother due in part to Mother's sobriety. (N.T. August 2, 2016, p. 15, lines 11-25). The DHS Social Worker also testified that S.S.R. should not be reunited with Mother due in part to Mother's sobriety. (N.T. August 2, 2016, p. 16, lines 1-8). The DHS Social Worker also testified that A.S.R. should not be reunited with Mother due to Mother's sobriety. Mother had also not taken an interest in the education and medical care of the Children. (N.T. August 2, 2016, p.16, p. 19, lines 15-20). (N.T. August 2, 2016, p. 20, lines 9-13). (N.T. August 2, 2016, p. 21, lines 11-16).

Based upon the testimony elicited at the Termination Hearing as well as the documents in evidence, this Court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa. C.S.A. §§ 2511 (a)(1),(2),(5), and (8) as Mother had failed to remedy the conditions that brought the child into care based on her inability or unwillingness to maintain sobriety; to cooperate with drug and alcohol counseling; and her disinterest in the Children's education and medical treatment. Furthermore, Mother's total inability or refusal to embrace the social services and parenting counseling offered to Mother since 2012 demonstrated Mother's inability to remedy the conditions that had led to the Children being adjudicated dependent within a reasonable time period.

The Court further found that because there was not a strong bond between Mother and Children, terminating parental rights would not cause the Children irreparable harm. (N.T. August 2, 2016, p. 18, lines 15-22). (N.T. August 2, 2016, p. 19, lines 24-25). (N.T. August 2, 2016, p. 20, lines 1-15). At the Termination Hearing the DHS Worker had testified the Children had developed a strong bond with the Children's caregivers, their maternal

10

grandparents, who they have lived with since 2012. (N.T. August 2, 2016, p. 17, lines 1-25). (N.T. August 2, 2016, p. 18, lines 1-25). (N.T. August 2, 2016, p. 19, lines 1-25). (N.T. August 2, 2016, p. 20, lines 1-25). (N.T. August 2, 2016, p. 21, lines 1-25). The testimony of the DHS Worker was deemed to be credible and accorded great weight. As the testimony before this Court on August 2, 2016 indicates, the evidence is clear and convincing that Mother did not remedy the conditions that caused her Children to come into care and thus has been and continues to be unable to provide proper care for her Children, warranting involuntary termination of the Mother's parental rights pursuant to 23 Pa. C.S.A. §§ 2511 (a) (1),(2),(5), and (8). This Court further concluded that termination of Mother's parental rights would be in the best interest of the Children in accordance with 23 Pa.C.S.A. § 2511(b) given the Mother's continued inability to parent the Children and the ability and willingness of the Maternal Grandparents to act as caregivers.

## CONCLUSION

This Court, after careful review of the findings of fact, the testimony presented on August 2, 2016, finds clear and convincing evidence to terminate Mother's parental rights under 23 Pa. C.S.A. §§ 2511 (a)(1),(2),(5), and (8). The court further finds pursuant to 23 Pa. C.S.A. § 2511(b), termination of the Mother's parental rights would not have a detrimental effect on the child and would be in the child's best interest. For the forging reasons, this Court respectfully requests that the August 2, 2016 Order terminating Mother's parental rights to the Children be **AFFIRMED**.

**BY THE COURT**

Date: *10-13-16*

Vincent W. Furlong, J.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above-captioned Opinion was filed on

In the Court of Common Pleas of Philadelphia County Family Court Division and served by first

class mail upon the following:

Daniel Silver, Esquire
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
Counsel for the Appellant Mother

Sharene Ginyard, Esquire
Defender Association of Philadelphia
1441 Sansom Street-9th Floor
Philadelphia, PA 19102
Attorney for the Z.E.V., A Minor

Carlin Talib Saafir, Esquire
2200 Ben Franklin Pkwy-Unit 402
Philadelphia, PA 19130
Attorney for Father

Joseph Eugene Randall
City of Philadelphia La Department
1515 Arch Street-16th Floor
Philadelphia, PA 19102
Attorney for the Department of Human Services

Date: 10-13-16

_____
Vincent W. Furlong, J.